UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                                    Case No. 22-CR-055

DIDION MILLING, INC.,
DERRICK CLARK,
SHAWN MESNER,
JAMES LENZ,
JOSEPH WINCH,
ANTHONY HESS, and
JOEL NIEMEYER,

        Defendants.

DEFENDANT DERRICK CLARK'S REPLY BRIEF IN SUPPORT OF HIS MOTIONS FOR SEVERANCE

## I. INTRODUCTION

A corporation can only act through its employees and agents. Although no allegations in Count 2 charge Derrick Clark (or any of the individual defendants) with violating OSHA <u>and he legally cannot be charged with Count 2</u>, the government indicates it will <u>expressly</u> argue that Didion is guilty because Derrick Clark and the other individual defendants willfully violated OSHA and caused the May 31, 2017 explosion that resulted in five deaths. The remaining counts—the only counts charging Derrick Clark and other individuals—do not charge these individuals with causing an explosion or causing anyone to die.

1

Despite this huge disconnect, the government says that Clark can still receive a fair trial if Count 2 remains joined. The government even makes the outlandish claim that "the fact that the workers died in the explosion is not spillover evidence." Gov't Br. 15. On the contrary, hearing the extremely inflammatory evidence related solely to Count 2 would almost certainly improperly affect the jury's consideration of the remaining counts, regardless of limiting instructions, against the individual defendants.

This is not a case where severance would give the individual defendants an advantageous position or a better chance of acquittal. Rather, severance here simply would prevent the <u>government</u> from gaining an unfair advantage from the highly prejudicial evidence associated <u>only</u> with a count that should never have been joined to begin with.

## II. ARGUMENT

### A. Clark cannot receive a fair trial unless Count 2 is severed.

Setting aside the joinder issue, the government admits that the severance analysis under Rule 14(a) ultimately comes down to whether a joint trial will be a fair one. Gov't Br. 11 (citing *United States v. Maggard*, 865 F.3d 960, 971 (7th Cir. 2017)). It will not.

To repeat, Count 2 alleges that Didion willfully violated OSHA's Grain Handling Standard, 29 C.F.R. § 1910.272(j), and that this violation caused an explosion and the deaths of five individuals. Paragraphs 41 and 42, the only paragraphs that specifically allege the cause of the explosion and deaths, are not

incorporated anywhere else in the indictment.[1]  While the government contends that Count 4 references the explosion, it does so only to introduce the OSHA investigation.  None of the individual defendants, in any of the remaining counts, are charged with causing any deaths.

Count 2 is charged only against the corporation, which can only act through its employees and agents.  *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985).  Thus, the government will explicitly argue that actions of Clark and the other individual defendants are directly responsible for causing the deaths.  *See* Gov't Br. 8, 9 & n.5.[2]

In this way, a joint trial would allow the government to expressly pin the deaths on the individual defendants, despite the fact that they are not (<u>and cannot be</u>) charged in Count 2 <u>and</u> then use the Count 2 evidence to improperly induce the jury to convict on the remaining counts.  A joint trial allows the government to introduce its most inflammatory evidence—the deaths—against the individual defendants, despite the fact that, in a severed trial, such evidence would be wholly irrelevant and inadmissible.

The government argues that the deaths are not spillover evidence because they bear directly on Clark's and Hess's criminal intent and the materiality of the

---

[1] Paragraph 41 is incorporated into Count 3, but the government has dismissed that count.
[2] To be clear, neither Clark nor any other individual defendant is explicitly referenced in any of Count 2's allegations.  Accordingly, it is *possible* that the government could prove Didion's liability on Count 2 by pointing solely to the actions of other, un-indicted individuals.  Yet, that approach (a) is belied by the government's own assertions (Dkt. No. 170 at 8, 9, & fn. 9); and (b) would bolster the defendants' arguments for misjoinder.

3

false statements charged in Counts 4, 8, and 9. Not so. While the fact of an OSHA investigation (and possibly the fact of an explosion) may be relevant to those counts, the fact that deaths resulted clearly is not. [3]

Whether the explosion caused five deaths, 50 deaths, or only property damage is of no consequence to Counts 4, 8 and 9, as evidenced by the fact that the grand jury specifically declined to incorporate paragraphs 41 and 42 into those counts—and those are the only paragraphs that reference the alleged cause of the explosion and the employee deaths. Count 4 mentions the fatalities in an un-numbered heading only, [4] and mentions the explosion only in the context of the impetus behind the OSHA investigation. Dkt. No. 8 at ¶ 68. Thus, the indictment itself indicates that the deaths and details of the explosion are irrelevant to the charges against Clark, Hess, and the other individual defendants.

Nor can a jury instruction cure the prejudice from this evidence. The government is going to explicitly argue that Didion is guilty on Count 2 because of the acts of these individual defendants (and perhaps others). This Court would then have to instruct the jury that the actions of the individual defendants must be held solely against Didion (and not against the individual defendants themselves), except where the government will argue that some actions of the individual

---

[3] The administrative subpoena given to Clark before his September 29, 2017, deposition never mentioned that OSHA was investigating a crime, and OSHA agents did not provide any such warning to Clark. Indeed, the Department of Labor lawyer questioning Clark repeatedly prevented lawyers representing Clark and Didion, from objecting to questions on his behalf. Clark will provide the court copies of these documents, if requested.

[4] Clark has moved to strike the government's unnecessary, cursory reference to "five-fatality explosion" in an un-numbered heading in Count 4. R. 123.

4

defendants pertain both to Count 2 and a different count. *See* Gov't Br. 15, n.9. Such an instruction is non-sensical and overly confusing.

The government fails to grapple with the unusual contours of this case that make jury instructions inadequate. Again, while the government cannot charge the individuals with Count 2, a joint trial will allow the government to blame them for the explosion and deaths, and will enable the government to use irrelevant, inflammatory evidence to secure a conviction against the individual defendants on the remaining counts. The only cure for this is to sever count 2; indeed, severance as a remedy is founded on the recognition that, in some cases (such as here), jury instructions are simply insufficient to cure undue prejudice. *Bruton v. United States*, 391 U.S. 123, 135 (1968) ("[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored.").

**B.      The usual concerns with severance are not present here.**

Clark concedes that joint trials are favored for good reasons, including preventing inefficiencies in presenting the same evidence and witnesses multiple times, decreasing the odds of an inconsistent verdict or unfair advantages to certain defendants, and allowing the jury to assess relative culpability. *See Richardson v. Marsh*, 481 U.S. 200, 210 (1987). Here, however, the usual concerns are almost nonexistent.

The defense seeks two trials: one for Didion on Count 2, and the other for all of the defendants (including Didion) on the remaining counts.[5] The latter trial could be scheduled first, thus eliminating any minimal advantage that the individual defendants might gain from observing the other trial. At most, the government would need to present <u>some</u> of its evidence twice, no more. There would be minimal hardship for witnesses, as the most traumatic testimony only relates to Count 2. Similarly, there would be no risk of an inconsistent verdict, as only Didion is charged in Count 2. Nor is this the case where a severed trial would result in co-conspirators being tried separately—both the conspiracy counts (and all alleged conspirators) would be tried together in the non-Count 2 trial. And severing Count 2 would not prevent the jury from assessing relative culpability because all of the defendants would still be joined in the trial on the remaining counts.

In attempting to tout the efficiency of joint trials, the government downplays the evidence that applies only to Count 2. The government claims that "an" explosion expert will testify, *see* Gov't Br. 19, despite disclosing <u>both</u> John Cholin and Ben Harrison as experts on the cause and origin of the explosion. Given the voluminous nature of those reports (206 and 109 pages, respectively), the defense reasonably expects that the government's expert testimony at trial—not to mention Didion's responsive expert testimony, as well as any rebuttal expert testimony from the government—will be considerable.

---

[5] As noted below, Defendant Clark will forego his *Bruton* motion based on the government's representations in its response brief.

The government also ignores that it has disclosed a third expert, Dan Leistra-Jones, who has authored a 50-page report about Didion's financial ability to pay for additional cleaning mechanisms. There is no apparent reason why such testimony would be admissible against the individual defendants. Nor does the government grapple with the spillover effect of such evidence, including the expert's opinion that Didion paid out $14 million in dividends in the years before the explosion instead of improving its cleaning systems.

The government also says that it does not "plan" to use some of the more sensitive evidence that the defendants have identified, such as gruesome photos of burned or crushed bodies, testimony about PTSD from the explosion, and testimony from widows. But that evidence was produced in discovery because the government sought out such evidence as part of its investigation. And, in fact, the government has <u>explicitly</u> told the defendants (and the court) "the defense can expect that what we produce in discovery will be used in the government's case-in-chief." Dkt No. 103 at 8 (quoting Dkt. No. 101-5 at 3). The defendants simply do not have the luxury of relying on the government's current "plan" not to use it.

**C.    The government's misjoinder arguments ignore the indictment.**

The government makes much of the distinction between misjoinder under Rule 8(a) and 8(b). As this is a motion to sever a <u>count</u>, not a defendant, Clark maintains that Rule 8(a) is a proper vehicle to analyze the joinder. In any event, the government admits that offenses must involve the "same act or transaction" of the "same series of acts or transactions" to be properly joined under either rule.

Fed. R. Crim. P. 8(a), (b). As the government's own indictment shows, however, Count 2 does not satisfy this standard.

The sole OSHA regulation underlying any of the charges in the indictment is a provision in OSHA's Grain Handling Standard that states:

> The employer shall develop and implement a written housekeeping program that establishes the frequency and method(s) determined best to reduce accumulation of fugitive grain dust from ledges, floors, equipment, and other exposed surfaces.

29 C.F.R. § 1910.272(j). The indictment alleged Didion violated Count 2 by (1) failing to develop a housekeeping program "specifically dedicated to preventing combustible dust fires and explosion[,]" and because (2) Didion could have implemented a number of additional housekeeping measures but did not. *Id.* at ¶ 38. Those paragraphs indicated the grand jury's view that Didion's cleaning program violated 1910.272(j) <u>even if perfectly followed</u>. Now, however, in an effort to meet the Rule 8(b) standard, the government re-frames the "core allegations" of Count 2 to be Didion's failure to comply with its Master Sanitation Schedule logbook. This reframing completely disregards paragraphs 37 and 38 of Count 2 as well as the express allegations that Didion's MSS cleaning schedule was explicitly designed for food safety—as opposed to employee-safety—purposes. Dkt. No. 8 at ¶¶ 11-13.

The government also attempts to make Count 2 about baghouses by inaccurately contending that OSHA's Grain Handling Standard regulates how fugitive dust is <u>created</u> in the first instance. This sole OSHA regulation on which the indictment is now based does not address or regulate how fugitive dust is

8

created; rather, it addresses how the dust is cleaned up <u>after</u> being generated, to reduce excess accumulation. While the original indictment did include OSHA regulations concerning the purpose, location, venting and protection of "baghouses," those allegations appeared in Count 3, which the government has dismissed.[6]

As alleged in the indictment, "[b]aghouses are part of a facility's dust collection system [that] use[s] suction to pull fine particles into pipes that carry the dust-laden air to a baghouse." Dkt. No. 8 at ¶ 59. This function is not regulated by OSHA and there are no OSHA recordkeeping or efficacy requirements for baghouses. More importantly, whatever shortcomings there may have been with respect to Didion's failure to appropriate record the pressure readings of its baghouses, such failures are entirely different from the alleged violations of the Grain Handling Standard because they do not pertain to the cleaning required to be done to reduce accumulations of fugitive dust <u>after</u> it is created.

In sum, in its attempt to show that Count 2 relates to the other counts under a Rule 8 analysis, the government flagrantly ignores the distinctions made in its own indictment. Count 2 should never have been joined with the other counts and should now be severed.

---

[6] The Grain Handling Standard imposes requirements on a baghouse's location, venting, and protection, as well as a requirement that the filters have a monitoring device that will indicate a pressure drop across the surface of the filter. 29 C.F.R. § 1910.272(l).

9

**D.     Clark will withdraw his separate motion for severance under *Bruton*.**

In responding to Clark's separate motion for severance based on *Bruton v. United States*, 391 U.S. 123 (1968), the government now pledges that, in the "unlikely" event that some of the co-defendants' statements reach the jury, the government will omit references to Clark.  Gov't Br. 23.  Given this representation, Clark will withdraw his motion for severance under *Bruton*, reserving the right to challenge the government's proposed redactions.

## III.     CONCLUSION

For all of the foregoing reasons, the government fails to rebut the defendants' showing that Count 2 was improperly joined and must be severed to ensure a fair trial.  The motion to sever Count 2 should be granted.

Dated this 10th day of February, 2023.

> **BISKUPIC & JACOBS, S.C.**
> By: /s/ Matthew L. Jacobs
> Matthew L. Jacobs, SBN 1017227
> Justin J. Dreikosen, SBN 1094426
> Biskupic & Jacobs, S.C.
> 1045 West Glen Oaks Lane, Suite 200
> Mequon, WI 53092
> matt@biskupicjacobs.com
> jdreikosen@biskupicjacobs.com
> Office: 262-241-0033
> Fax:  866-700-7640
>
> *Counsel for Derrick Clark*